[No. 13879. In Bank.— July 2, 1891.]

E. O. MILLER, AND O. S. McCOY, INTERVENER, RE-
SPONDENTS, *v.* P. BYRD, APPELLANT.

SWAMP AND OVERFLOWED LANDS — PURCHASE BY COUNTY TREASURER —
AGENCY — FIDUCIARY CAPACITY.— A county treasurer is not disqualified
by reason of his office from applying for and purchasing swamp and over-
flowed land from the state, he not being an agent of the state for the sale
of the lands, nor subject to the rule that one acting in a fiduciary capa-
city cannot deal with himself as an individual.

ID.— VALIDITY OF CERTIFICATE OF PURCHASE — OBLIGATION OF CONTRACTS.
— The validity of a certificate of purchase of state lands is to be deter-
mined by the law in force at the time of its issuance, and the obligation
of the contract of purchase cannot be affected by subsequent legislation.

ID.— NEW CONSTITUTION — SUITABLENESS OF LAND FOR CULTIVATION.
— A certificate of purchase of state swamp-land, obtained before the
adoption of the constitution of 1879, requiring sales to be made to actual
settlers only of all lands suitable for cultivation, is not impaired or af-
fected by the constitution.

APPEAL from a judgment of the Superior Court of Tu-
lare County.

The facts are stated in the opinion.

*Brown & Daggett*, for Appellant.

Notwithstanding Byrd was county treasurer, he had
the constitutional right to acquire and possess property.
(Const. 1849, art. 1, sec. 1.) Byrd possessed the quali-
fications prescribed by the statute, and pursued the
necessary steps to purchase the swamp-land, and his
right to purchase became perfect as against the state and
all subsequent applicants. (Pol. Code 1873, secs. 3443–
3445; *Hinckley* v. *Fowler*, 43 Cal. 63; *Pollard* v. *Putnam*,
54 Cal. 634.) The statute (Pol. Code, sec. 3443) does
not except county treasurers from its privileges and ben-
fits, and it is not competent for the courts, in any case,
to create exceptions, when the legislature has declared
none. (*Tynan* v. *Walker*, 35 Cal. 635; 95 Am. Dec. 152.)
An agent whose duty it is to sell land may purchase the

land which it was his duty to sell, by direct dealings with the principal, where there is no concealment or deception on the part of the agent. (1 Am. & Eng. Ency. of Law, 376, and numerous cases there cited.)

*Charles G. Lamberson,* and *Lamberson & Taylor,* for Intervener, McCoy.

The land was suitable for cultivation, and Byrd was not a settler thereon. Lands belonging to this state which are suitable for cultivation can be granted only to actual settlers. (Const., art. 17, sec. 3.) This constitutional provision applies to all lands and to applications filed before as well as to those filed after the constitution went into effect. (*Mosely* v. *Torrence,* 71 Cal. 318; *Johnson* v. *Squires,* 55 Cal. 103; *Dillon* v. *Saloude,* 68 Cal. 267.) And the certificate of purchase issued to Byrd was not a grant of the lands to him, but was simply a contract for their sale to him, liable to be revoked at any time. (*Taylor* v. *Weston,* 77 Cal. 534.) By a grant is meant the passing of the title in fee-simple. (Civ. Code, sec. 1105.) A patent divests the state of its title, but a certificate of purchase has no such effect. (*Gilson* v. *Robinson,* 68 Cal. 542.) Until the issuance of a patent to him, his certificate of purchase was liable to be contested upon any grounds and for any reason which would prevent the granting of the lands to him by the state. (Pol. Code, secs. 3414, 3415; *Taylor* v. *Weston,* 77 Cal. 534.) Byrd, as county treasurer, was an agent of the state for the sale of the land, and his purchase of the land was against public policy and void. (*Edwards* v. *Estell,* 48 Cal. 194; Civ. Code, sec. 1667; *Spence* v. *Harvey,* 22 Cal. 337; 83 Am. Dec. 69; *Swan* v. *Chorpenning,* 20 Cal. 182; *San Diego* v. *S. D. & L. A. R. R. Co.,* 44 Cal. 106; *Andrews* v. *Pratt,* 44 Cal. 309; *Boyd* v. *Blankman,* 29 Cal. 19; 87 Am. Dec. 146; *Wilbur* v. *Lynde,* 49 Cal. 290; 19 Am. Rep. 645; *Davis* v. *Rock Creek L. F. & M. Co.,* 55 Cal. 359; 36 Am. Rep. 40; *Golson* v. *Dunlap,* 73 Cal. 157.)

*N. O. Bradley,* for Respondent Miller.

BELCHER, C. — The plaintiff, E. O. Miller, brought this action against five defendants to determine a contest as to which one of the parties thereto was entitled to purchase from the state a certain tract of swamp and overflowed land in Tulare County.

The court below found that all of the applications to purchase the land were null and void, and accordingly gave judgment that neither of the parties to the action was entitled to purchase the land, or any part thereof. From this judgment the defendant, Byrd, alone appeals, and the case is brought here on the judgment roll.

The only question presented for consideration and decision is as to the rights of the appellant.

The facts, as shown by the pleadings and findings, may be briefly stated as follows: During the year 1873, the appellant was the duly elected, qualified, and acting treasurer of the county of Tulare. He desired to purchase the land in controversy, and, for the purpose of doing so, on the third day of January, 1873, made an affidavit in the form prescribed by section 3443 of the Political Code; and all the facts and matters therein stated were true. On the same day the affidavit was filed in the office of the surveyor of the county, and within thirty days thereafter the surveyor made a survey of the land and completed the survey, plat and field notes thereof, and recorded them in a book kept in his office, and forwarded duplicate copies thereof, together with a copy of the application, to the surveyor-general of the state for approval. These papers were received by the surveyor-general and filed in his office on the 25th of January, 1873, and on the same day he duly approved the survey and application. On the fifteenth day of March, 1873, the appellant paid to the county treasurer of Tulare County, in gold coin of the United States, twenty per cent of the purchase price of the land, and interest on the balance thereof, at the rate of ten per cent per annum, from

January 25, 1873, to January 1, 1874, together with three dollars for the certificate of purchase. The county treasurer reported to the register of the state land-office the fact of the payment of these sums, and thereafter, on the 8th of April, 1873, the register issued to and in the name of the appellant a certificate of purchase for the land, signed by him and attested by his official seal. At that time no other application to purchase the land, or any part thereof, had been made. When appellant made his application, on the 3d of January, the land had been segregated as swamp and overflowed land, under authority of the United States, for more than six months. At the time of the trial, the land was suitable for cultivation.

It will be observed that the court found all the facts necessary to show that the land in controversy was subject to sale by the state, and that the appellant was qualified to purchase the land, and his proceedings to accomplish that end were regular and effective, unless the fact that he was county treasurer at the time debarred him of the right.

It seems clear, therefore, that in making its decision that appellant's application was null and void, the court below must have acted on the theory that because appellant was county treasurer he was an agent of the state for the sale of swamp-lands in his county, and hence was disqualified to purchase the land in question.

In *Edwards* v. *Estell*, 48 Cal. 194, it was held that a county surveyor, in receiving an application to purchase swamp-lands and making a survey of them, was an agent of the state for the sale of such lands, and therefore could not himself become the purchaser. And, incidentally, it was said that a county treasurer, in receiving the purchase-money for swamp-lands, was an agent of the state for the sale of the lands.

It is a settled rule that one acting in a fiduciary capacity cannot deal with himself as an individual, for the reason that an opportunity would thereby be presented

for the commission of frauds. Under the provisions of
the code in 1873, the rule thus declared was clearly appli-
cable to a county surveyor. He received the application
to purchase, surveyed the land applied for, if a survey
had not already been made, and then forwarded the sur-
vey and application to the surveyor-general for approval.
It would have been possible for him, after an application
had been presented and a survey requested, to have made
another application for himself, and to have forwarded
his own application with the survey to the surveyor-
general first, or he might, in making a survey for himself,
have included more acres within the lines surveyed and
marked out than appeared and were reported,— thus
committing a fraud upon the first applicant or the state.

But does the rule apply to a county treasurer? He
had no duties to perform until after all the preliminary
steps to effect the purchase had been taken and approved
by the surveyor-general. Then he was simply to receive
from the purchaser, if offered within fifty days after the
approval, twenty per cent of the purchase-money, with
interest on the balance till the 1st of January following,
and three dollars for a certificate of purchase, and to re-
port these payments to the register of the land-office.
The money was to be placed to the credit of the swamp-
land fund of the county.

The statute fixed the price of the land, the rate of in-
terest to be paid, and the terms and conditions of pay-
ment. The treasurer had therefore no opportunity to
commit frauds upon the state, unless he did so by mis-
appropriating or stealing the money. But such a fraud
might have been committed as well by misappropriat-
ing any other money paid into the treasury.

If the theory suggested be true, it would seem to fol-
low that if appellant had applied to purchase the land,
and his application had been approved before he became
county treasurer, he could not have completed the pur-
chase by the payment of the money after he became

county treasurer, because he would then have been the agent of the state to sell the land and receive the purchase-money; or if he had applied to purchase the land, and his application had been approved, and he had made the first payment of principal and interest, and a certificate of purchase had been issued to him, and thereafter he had become county treasurer, he could not have completed the purchase by paying the interest and balance due the state, because he would have been compelled to make such payment to himself, and being the agent of the state for the sale of the land, his agency would have disqualified him in the premises, and as a consequence, he would have forfeited his rights under the certificate of purchase if the state had proceeded against him on account of his non-payment. But this would be giving the law an absurd construction, and one never contemplated or intended by the law-makers.

We see no practical difference between the duties of a county treasurer in the sale of swamp-lands and those of registers and receivers in the sale of government lands at private entry. It is, however, well settled that registers and receivers may purchase government lands at private entry, at the price fixed by the government. (Lester's Land Laws, 337, 338.) The practice has been sanctioned by the land department of the general goverment, and it has not been suggested that the practice has violated any rule of public policy, or that the government or any citizen has been defrauded by means thereof.

In our opinion, therefore, the decision as to the validity of appellant's application to purchase the land in question was erroneous.

It is further suggested in the brief filed by the intervener that appellant was not entitled to have judgment entered in his favor, because it appeared that the land had become suitable for cultivation, and it did not appear that he was or had ever been an actual settler thereon. We see no force in this suggestion. When appellant

made his application and obtained his certificate of purchase, the land was not suitable for cultivation, and there was no provision of the constitution or statutes at that time that state lands suitable for cultivation could only be sold to actual settlers thereon.    The certificate of purchase was *prima facie* evidence of legal title in the holder (Pol. Code, sec. 3514; Code Civ. Proc., sec. 1925); and it must be presumed that the new constitution did not, and was not intended to, impair the obligations of contracts already made.    The validity of the certificate must therefore be determined by the law in force at the time it was issued, and it cannot be affected by laws subsequently passed.

The case of *Dillon* v. *Saloude*, 68 Cal. 267, is not in conflict with what has been said.    That case simply held that where one had only made *application* to purchase land suitable for cultivation before the adoption of the constitution in 1879, he could not after its adoption complete the purchase, unless he was an actual settler on the land.

It results, in our opinion, that the judgment against defendant, Byrd, should be reversed, and the cause remanded, with directions to the court below to enter judgment in his favor on the findings.

TEMPLE, C., and VANCLIEF, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment against defendant, Byrd, is reversed, and the cause remanded, with directions to the court below to enter judgment in his favor on the findings.